UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAIAN LUNGU,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:26-cv-2021

Honorable Hala Y. Jarbou

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 2.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **Discussion**

### I.      **Procedural History**

The habeas petition, originally filed in the United States District Court for the Eastern District of Michigan, challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 2, PageID.62.) Respondents filed their response on June 17, 2026, (ECF No. 6) and Petitioner filed a reply on July 6, 2026. (ECF No. 8). On July 10, 2026, the Eastern District Court transferred this matter to this Court for further proceedings. (ECF No. 9.)

## II.      Factual Background

Petitioner is a native of Romania. (Pet., ECF No. 2, PageID.40; Wynns Decl. ¶ 4, ECF No. 6-2, PageID.101.) Petitioner entered the United States in 1985 as a refugee and was thereafter accorded lawful permanent resident status. (Pet., ECF No. 2, PageID.40; Wynns Decl. ¶¶ 4, 9, ECF No. 6-2, PageID.101, 102.)

On February 5, 2008, ICE issued Petitioner a Form I-862, Notice to Appear (NTA), charging Petitioner with removability under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA) because Petitioner "was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." (Wynns Decl. ¶ 22, ECF No. 6-2, PageID.103.)

On April 28, 2008, an Immigration Judge ordered Petitioner removed to Romania. (*Id.* ¶ 23, PageID.104; Pet., ECF No. 2, PageID.40.) Petitioner did not appeal that decision, rendering the order of removal administratively final on May 29, 2008. (*Id.*)[1] However, on December 11, 2008, the Romanian Consulate informed ICE that it would not issue travel documents for Petitioner. (*Id.* ¶ 24.) On December 17, 2008, Petitioner was released from custody on an order of supervision. (*Id.* ¶ 25.)

On August 8, 2025, DHS arrested Petitioner. (*Id.* ¶ 31, PageID.105.) On September 2, 2025, the Romanian Consulate again informed ICE that Romania would not issue travel documents for Petitioner because Petitioner lost his Romanian citizenship in the 1980s. (*Id.* ¶ 32, PageID.106.) ICE Enforcement and Removal Operations Detroit has sent "numerous follow up emails" to the

---

[1] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Petitioner had 30 days from which to file an appeal of the April 28, 2008, order of removal. 8 CFR § 1003.38

ICE Headquarters inquiring about the possibility of third country removal but has not received any response. (*Id.* ¶ 36.)

Petitioner alleges that he "suffers from several chronic, potentially life-threatening illnesses." (Pet., ECF No. 2, PageID.45.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).[2]

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney

---

[2] Although Respondents indicate that Petitioner has past criminal convictions, Respondents do not assert that they are currently detaining Petitioner under any mandatory detention provisions due to Petitioner's past criminal convictions.

General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 1989. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[3] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was most recently taken into custody by ICE on August 8, 2025, and as of the filing of his petition, had been in custody for more than six consecutive months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because Romania has refused to issue travel documents for Petitioner as Petitioner is not a Romanian citizen, the United States does not have a repatriation agreement with Romania, and Respondents "have failed to deport [Petitioner] after more than eighteen years of trying." (Pet., ECF No. 2, PageID.50.) In response, Respondents claim only that "the agency has not yet

---

[3] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

4

exhausted all available options." (Resp., ECF No. 6, PageID.93.)  Indeed, nothing presented to this Court suggests that Respondents are any closer to removing Petitioner than they were in 2008.

Under these circumstances, the Court concludes that there is "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents have not done so.  It appears that Respondents cannot remove Petitioner to Romania.  There is no indication that Respondents have identified, or meaningfully attempted to identify, any other country to which they can remove him.  Thus, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action. They seek the dismissal of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128,

5

at *9–10 (W.D. Mich. Dec. 12, 2025). To ensure that this Court's orders regarding habeas relief will bind at least one Respondent with authority to act in the event that Petitioner is transferred outside the area under the authority of the ICE Detroit Field Office, the Court will retain all of the remaining Respondents.

### Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions of release that existed prior to Petitioner's present detention. The Court will also order Respondents to file a status report within five days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

Dated: July 23, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE